IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PHILLIP ANDREW BAUGHMAN, JR.,**

  **Plaintiff,**

**v.**
               **CIVIL ACTION NO. 5:15cv47**
               **(Judge Stamp)**

**JAMES RUBENSTEIN, Commissioner of
Corrections; PAT MIRANDY, Warden;
JOYCE BILLS, IPO, In Their Professional
And Individual Capacities,**

  **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* Plaintiff, Philip Andrew Baughman, Jr., initiated this case on April 15, 2015, by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. §1983. At the time the Plaintiff filed his complaint, he was incarcerated at St. Marys Correctional Center ("SMCC"). [1] His complaint involves allegations that Defendants violated his civil rights with respect to his parole consideration. On April 20, 2015, Plaintiff was granted leave to proceed *in forma pauperis* and on May 4, 2015, he paid the required initial partial filing fee. On July 17, 2015, an Order was entered directing Plaintiff to file copies of his administrative grievances. On July 23, 2016, Plaintiff

---

[1] As noted in the Factual Background, *infra*, Plaintiff discharged his sentence on February 17, 2016.

1

complied. On March 4, 2016, following an initial screening of the complaint, the undersigned determined that summary dismissal was not appropriate, and an Order to Answer was entered. On April 4, 2016, Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. A *Roseboro* Notice was issued on April 5, 2016. To date, Plaintiff has failed to respond.

## II. The Pleadings

### A. The Complaint

As previously noted, Plaintiff's complaint involves allegations arising from events surrounding his potential release on parole. With respect to Defendant Rubenstein, Plaintiff alleges that he failed to instruct and direct his subordinates in the proper process of preparing him to go before the Parole Board thus denying him proper parole consideration. With respect to Defendant Mirandy, the Warden of SMCC, Plaintiff alleges that he usurped the Parole Board and denied him parole by failing to provide proper instruction on preparation of necessary paperwork for the Parole Board to consider him for parole eligibility. Plaintiff also alleges that Defendant Bills, an institutional parole officer at SMCC failed to prepare the proper paperwork for the Parole Board to consider his parole eligibility and also failed to correct incorrect information and outdated facts in the parole report. For relief, Plaintiff seeks compensatory and punitive damages, an immediate parole reconsideration[2], and termination of Defendant Bills' employment as the institutional parole officer at SMCC.

---

2 Because Plaintiff has been released from custody, his request for an immediate parole hearing is moot.

2

**B. Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment**

In support of their motions, the Defendants allege:

1. Plaintiff's complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

2. Plaintiff's claims regarding his February 2015 parole hearing must be dismissed because he failed to exhaust his administrative remedies;

3. Even if Plaintiff had filed a grievance regarding the Parole Board's denial of parole in February 2015, his complaint would be moot as he suffered no actual harm.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## B. Summary Judgment

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer

evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. Factual Background

Plaintiff was an inmate at SMCC between August 15, 2014 and February 17, 2016. ECF No. 49-1 at 1. Because he was a convicted sex offender, Plaintiff was required to have a psychological evaluation prior to consideration for parole. Id. A third-party provider, PsiMed Corrections, LLC ("PsiMed"), provides psychological evaluations and services to inmates in facilities operated by the West Virginia Division of Corrections. Id. at 2.

Plaintiff arrived at SMCC after the Parole Board already had met at that institution in August of 2014. Accordingly, the Parole Board placed him on the list for parole consideration in September of 2014, but classified him as needing "Further Consideration" until a full psychological evaluation was completed. ECF No. 49-1 at 2. Defendant Bills advised PsiMed that a psychological evaluation was needed, and on September 25, 2014, Plaintiff was administered his MMPI-2 which was scored that same day and immediately sent to Aimee Meadows, the psychologist employed by PsiMed at SMCC. Id.

6

On October 14, 2014, Defendant Bills again requested that Plaintiff receive a psychological evaluation and emailed Ms. Meadows a list of inmates who were scheduled for parole hearings and still required psychological evaluations. ECF No. 49-1 at 6. Defendant Bills sent a follow-up email on October 23, 2014. Id. at 7. On November 5, 2014, Defendant Bills sent a third email to Ms. Meadows, with a copy to Ashley Spruce, another PsiMed psychologist who worked at Mount Olive Correctional Center "MOCC". The email noted that although Plaintiff had been referred in September, the evaluation was still not complete. Id. at 8.

On November 14, 2014, Dana McVey from the WV State Parole Board emailed Ms. Meadows and Defendant Bills about the status of Plaintiff's psychological evaluation. ECF No. 49-1 at 9. Ms. Meadows replied that same date and stated: "Just got all of his testing last week. His eval should be done this week. Ashley was just waiting on the testing." Id.

Apparently due to a staff shortage, PsiMed was unable to complete Plaintiff's psychological evaluation by November 19, 2014, the date of the new Parole Board hearings at SMCC. Specifically, Aimee Meadows left PsiMed's employ, and PsiMed had Ms. Spruce covering both SMCC and MOCC. ECF No. 49-1 at 3.

On December 3, 2014, Ms. Spruce emailed Defendant Bill to ask whether Plaintiff's evaluation needed to be completed in December, noting that she "just got his testing on [the] 20th [of November] too." ECF No. 49-1 at 10. Defendant Bill replied on December 4, 2014, advising Ms. Spruce that Plaintiff was not on the parole hearing list for December but could be put on for January 2015. Id.

7

On December 18, 2014, Defendant Bills emailed Ms. Spruce a list of inmates, including Plaintiff, who needed full psychological evaluations. ECF No. 49-1 at 12. Ms. Spruce responded on that same date, repeating that she "didn't get his testing until mid November but he will be done for Jan." Id. at 12.

On January 27, 2015, Defendant Bills and Ms. Spruce exchanged emails about Plaintiff and other inmates awaiting parole consideration. Ms. Spruce noted that she forwarded Plaintiff's psychological evaluation to the Parole Board on January 5, 2015. ECF No. 49-1 at 13. Plaintiff was seen by the Parole Board in February 2015 and denied parole. ECF No. 49-1 at 14. In its Parole Decision Summary, the Parole Board noted that the denial was because of Plaintiff's prior unsatisfactory supervision history. Id. at 15. The Parole Board scheduled Plaintiff for reconsideration in February of 2016. Id. at 14. However, Plaintiff discharged his term of imprisonment by expiration of his sentence on February 17, 2016. Id. at 18.

## V.  ANALYSIS

### A. Defendants Rubenstein and Mirandy

Liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh 275 F.2d 391, 402 (4th Cir. 2001 (internal citations omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a

8

causal connection to the harm alleged must be shown.[3]  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, Plaintiff alleges that Defendant Rubenstein "failed to correct and instruct staff at [SMCC] in the proper procedures for preparing the Plaintiff to come before the Board and in the law on insuring that all information is current and correct." ECF No. 1 at 7. With respect to Defendant Mirandy, Plaintiff alleges that he "failed to supervise his I.P.O. and provide proper instruction so that the Plaintiff would be brought before the W.Va. parole Board to fairly consider parole and such failure den [sic] this Plaintiff parole…." Id. Accordingly, Plaintiff's complaint makes no specific allegations against Rubenstein or Mirandy to indicate that either was personally involved in any alleged violation of his constitutional rights.  Rather, it appears that Plaintiff has merely named Rubenstein in his official or supervisory capacities as Commissioner of the West Virginia Division of Corrections and Mirandy in his official or supervisory capacities as the warden of SMCC.  However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted).  Therefore, suits against state officials in their official capacities should be treated as suits against the state.  Id. at 166.  In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation.  Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)).  In this case, Plaintiff fails to assert that

---

[3]To the extent Plaintiff may be asserting that Rubenstein and Mirandy violated his constitutional rights by denying his administrative grievance, that claim is without merit.  This is not the type of personal involvement required to state a § 1983 claim.  See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

a policy or custom of the WVDOC or SMCC played a part in the alleged violation of his constitutional rights.

Furthermore, there is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, 550 F.2d at 928. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[4]

Here, Plaintiff fails to allege any personal involvement on the part of these

---

[4] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

Defendants and does not make any allegations which reveal the presence of the required elements for supervisory liability. Accordingly, Plaintiff's complaint fails to state a colorable claim against either Defendants Rubenstein or Mirandy.

**B. <u>Defendant Bills</u>**

Plaintiff makes two separate allegations against Defendant Bills. First, he alleges that Defendant Bills "was malfeasant and denied this Plaintiff his liberty interest of parole consideration before the W.Va. Parole Board when failing to present the Plaintiff before the Board in a timely manner of Sept. 2014 when he was eligible and this effectively usurped the Board." ECF No. 1 at 8. Second, he alleges that Defendant Bills "failed to correct incorrect information in the Parole Report which was relied upon for parole consideration by the W.Va. Parole Board and this served to deny Plaintiff parole consideration and usurped the Board." <u>Id.</u>

As detailed in the factual background, *supra*, the WVDOC contracts with a third-party, PsiMed Corrections, LLC, to provide psychological evaluations for inmates. In September 2014, Defendant Bills forwarded Plaintiff's name to Aimee Meadows, the psychologist assigned to SMCC. In addition, on September 25, 2014, the same date as it was scored, Defendant Bills forwarded Plaintiff's NNPI-2 to Ms. Meadows. Thereafter, Defendants Bills followed up on the request for performance of Plaintiff's psychological evaluation by sending multiple emails to PsiMed employees requesting that Plaintiff's evaluation be completed. It is clear that Defendant Bills had no other avenue to obtain the necessary evaluation for Plaintiff and acted in good faith to obtain the necessary psychological evaluation to enable Plaintiff to appear before the Parole Board. It is

equally clear that the failure of the third party, PsiMed, to promptly respond despite repeated requests was the sole cause of the delay in Plaintiff receiving a psychological evaluation.

Courts apply tort principles of foreseeability and intervening superseding causes when determining whether to attach liability for the acts of a third party under section 1983. See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (stating that "subsequent acts of independent decision makers . . . may constitute intervening superseding causes that break the causal chain"); see also, e.g., Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of the intermediary in some way tainted the actions of the defendant").

Here, Defendant Bills repeatedly requested that PsiMed perform the required psychological evaluation, and she made them aware of Plaintiff's entitlement to a parole hearing. Defendant Bills' actions did not infringe upon Plaintiff's rights, and the delay was not caused by, or influenced by her. Therefore, because the delay in Plaintiff's appearance before the Parole Board was the direct result of PsiMed's failure to complete his psychological evaluation until January of 2015, Defendant Bill's cannot be held responsible, and Plaintiff's first allegation against her fails to state a cause of action.

Plaintiff's second allegation against Defendant Bill's, that she failed to correct incorrect information in the Parole Report, even if true, is due to be dismissed as more fully discussed below.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with

12

respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available.  Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added). The exhaustion standard is stringent and requires that parties utilize the available administrative remedies correctly and to their fullest extent before a district court may hear the case.

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Therefore, "the PLRA exhaustion requirement requires [*full* and] *proper* exhaustion."  Woodford, 548 U.S. at 93 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  Id. at 103.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues.  The first level involves filing a G-1 Grievance Form with the Unit Manager.  If the inmate receives no

response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections. See WVDOC Policy No. 335.00 (enumerating procedures and rules for properly filing grievances in WVDOC facilities). ECF No. 49-2.

In the instant case, although Plaintiff filed a grievance with his Unit Manager on January 15, 2015, regarding the parole review process, it in no way raised allegations that there was incorrect information in his parole report. The specific grievance stated: "Pursuant to the Unit Team Response to Grievance 14-SMCC-76-1-164[,] I was guaranteed I would have my necessary paperwork completed so I could see the Board that was dated 12-8-14 – no psych eval has been completed and I have been denied two parole review opportunities." ECF No 18 at 2. Furthermore Defendant Mirandy has filed an affidavit indicating that "[u]pon a review of St. Marys Correctional Center files, there are no grievances filed by Plaintiff regarding denial of parole in February 2015, nor are there any grievances filed by Plaintiff which allege wrongdoing by Ms. Bills leading to his denial of parole in February 2015.[5] Accordingly, Plaintiff's second allegation against Defendant Bills is due to be dismissed for failure to exhaust administrative grievances.

## VI. **RECOMMENDATION**

In consideration of the foregoing, it is the undersigned's recommendation that the Defendants' Motion to Dismiss, on in the Alternative, for Summary Judgment [ECF No. 48] be **GRANTED**, and the Plaintiff's Complaint be **DENIED WITH PREJUDICE** with

---

[5] The undersigned notes that Plaintiff never specifies in his complaint what information was incorrect in the parole report.

14

respect to his claims against Defendants Rubenstein and Mirandy; be **DENIED WITH PREJUDICE** with respect to his claim that Defendant Bills failed to present the Plaintiff before the Board in a timely manner; and **DENIED WITHOUT PREJUDICE** with respect to Plaintiff's claim that Defendant Bills failed to correct information on the Parole Report for failure to exhaust administrative remedies.

Within fourteen (14) days after being served with a copy of this report recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr. United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District

15

Court for the Northern District of West Virginia.

DATED: November 3, 2016

                                        */s Michael John Aloi*
                                       MICHAEL JOHN ALOI
                                       UNITED STATES MAGISTRATE JUDGE